## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE JAMES MADISON PROJECT, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )   Civil Action No. 19-2461 (ABJ) |
| DEPARTMENT OF THE TREASURY, | ) ) ) |
| Defendant. | ) ) |

## <u>MEMORANDUM OPINION</u>

Plaintiffs The James Madison Project and Kadhim Shubber submitted a FOIA request to the Office of the Comptroller of the Currency ("OCC") on June 7, 2018.  They sought documents related to OCC's review of a number of banks in the wake of the revelation that employees at Wells Fargo, N.A. had opened millions of fake accounts in order to meet the company's sales goals.  *See* Pls.' FOIA Request, Ex. A to Decl. of Frank D. Vance, Jr. [Dkt. # 12-2] ("FOIA Request").

Defendant conducted a search and found 669 pages of records responsive to plaintiffs' request, Def.'s Statement of Undisputed Material Facts [Dkt. # 12-1] ("Def.'s SUMF") ¶¶ 1–2, and it withheld all of these pages in full pursuant to FOIA Exemptions 5 and 8.  *Id.* ¶ 3; Def.'s Mot. for Summ. J. [Dkt. # 12] ("Def.'s Mot.").  In its motion for summary judgment, defendant argues that it has complied with all of its obligations under FOIA.  Def.'s Mot.  Plaintiffs opposed the motion arguing that defendants have not justified the applicability of the exemptions as to 34 of the 669 withheld pages.  Pls.' Opp. to Def.'s Mot. [Dkt. # 13] ("Pls.' Opp.").

For the following reasons, the Court will grant defendant's motion for summary judgment.

## BACKGROUND

The OCC is an independent bureau within the Department of the Treasury. Compl. [Dkt. # 1] ¶¶ 5–6. It supervises approximately 2,000 national banks and federal savings associations, and it is charged with ensuring that the banks it regulates operate in a safe manner in compliance with laws requiring fair treatment of their customers and fair access to credit and financial products. 12 U.S.C. § 1(a); *see generally* 12 U.S.C. § 1 *et seq.* OCC's supervisory activity includes annual on-site reviews of banks throughout the country to ensure compliance with applicable laws. *See* 12 U.S.C. §§ 481, 1820(d). OCC also has the power to assess civil money penalties for violations of law. *See* 12 U.S.C. § 1818.

In 2016, OCC issued a Consent Order for a Civil Money Penalty against Wells Fargo Bank, N.A. for "deficiencies and unsafe or unsound practices in the Bank's risk management and oversight of the Bank's sales practices." *In re Wells Fargo Bank, N.A. Sioux Falls*, *South Dakota*, Enforcement Action No. 201-079, 2016 WL 9330727, at *1 (O.C.C. Sept. 6, 2016). Soon after, the agency announced that it would conduct a review of forty large and midsize banks and assess the sufficiency of their controls with respect to sales practices. *See An Examination of Wells Fargo's Unauthorized Accounts and the Regulatory Response Before the S. Comm. on Banking, Hous., & Urban Affairs*, 114th Cong. 10 (2016) (statement of Thomas J. Curry, Comptroller of the Currency) *available at* https://www.occ.treas.gov/news-issuances/congressional-testimony/2016/pub-test-2016-115-written.pdf. On June 5, 2018, it became known that OCC had

completed this examination and compiled its findings in a report (hereinafter, the "Horizontal Review"), although it did not make the report or its findings public. *See* FOIA Request at 1.

Plaintiff The James Madison Project is a "non-partisan organization established in 1998 to promote government accountability and the reduction of secrecy" and to educate "the public on issues relating to intelligence and national security." Compl. ¶ 3. Plaintiff Kadhim Shubber is the U.S. Legal and Enforcement Correspondent for the Financial Times. *Id*. ¶ 4.

On June 7, 2018, plaintiffs submitted a FOIA request to OCC, seeking four categories of documents related to the Horizontal Review:

1. The Report itself, including any appendices, addendums or exhibits;

2. To the extent they do not fall within the scope of the Report itself, any documentation memorializing factual inquiries regarding the examinations of the individual banks, any violations of law identified, and any recommendations made for rectifying deficiencies in the practices of the banks;

3. To the extent they do not fall within the scope of the Report itself, letters sent by OCC to individual banks detailing bank-specific findings, warnings, and/or recommendations derived from information compiled in the course of drafting the Report; and

4. To the extent they do not fall within the scope of the Report itself, any documentation provided to the OCC Executive Committee and/or the Comptroller in the context of briefing them on the details of the Report.

FOIA Request at 1–2. Plaintiffs withdrew their request for the second category of records by email on July 27, 2018. *See* Ex. B to Decl. of Frank D. Vance, Jr. [Dkt. # 12-2].

On February 27, 2019, OCC responded to the FOIA request by letter, stating that the agency had located 669 pages of records but that they were going to be withheld in full because the records sought were exempted by FOIA Exemptions 5 and 8. Ex. C to Decl. of Frank D. Vance, Jr. [Dkt. # 12-2]. Plaintiffs appealed this decision, and on March 21, 2019, OCC issued its

final decision stating the withholdings were proper.  *See* Ex. E to Decl. of Frank D. Vance, Jr.

[Dkt. #12-2].   Plaintiffs filed this lawsuit on August 14, 2019 seeking disclosure of the withheld

records.  *See* Compl.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  The party seeking summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).   To defeat summary

judgment, the non-moving party must "designate specific facts showing that there is a genuine

issue for trial."  *Id.* at 324 (internal quotation marks omitted).  When the court is presented with

cross-motions for summary judgment, it analyzes the underlying facts and inferences in each

party's motion in the light most favorable to the non-moving party.  *See Anderson v. Liberty Lobby,

Inc.*, 477 U.S. 242, 247 (1986).

The mere existence of a factual dispute is insufficient to preclude summary judgment.  *Id.*

at 247–48.  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving

party; a fact is "material" only if it is capable of affecting the outcome of the litigation.  *Id*. at 248;

*Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

When considering a motion for summary judgment under FOIA, the court must conduct a

*de novo* review of the record.  *See* 5 U.S.C. § 552(a)(4)(B). The court may grant summary judgment

based on information provided in an agency's affidavits or declarations when they are "relatively

detailed and non-conclusory," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted), and "not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  Such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard*, 926 F.2d at 1200 (citation and internal quotation marks omitted).

## ANALYSIS

FOIA requires government agencies to release records upon request in order to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  The statute provides that: "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person," 5 U.S.C. § 552(a)(3)(A), unless the records fall within one of nine narrowly construed exemptions. *See* § 552(b); *FBI v. Abramson*, 456 U.S. 615, 630–31 (1982).  This framework "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003), citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).

When an agency withholds documents or parts of documents, it must explain what it is withholding and specify the statutory exemptions that apply.  *See Vaughn v. Rosen,* 484 F.2d 820, 825–28 (D.C. Cir. 1973).  Ultimately, an agency's justification for invoking a FOIA exemption is

sufficient if it appears "logical" or "plausible." *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (citations omitted)

In this case, defendant maintains that it conducted an adequate search and that it properly applied FOIA Exemptions 5 and 8. Def.'s Mot. Plaintiffs are not challenging the adequacy of defendant's search, nor are they challenging the withholding of 635 out of 669 pages. Pls.' Opp. at 1. Thus, there is no dispute of fact as to those issues, and the Court need not address them. *See Shapiro v. U.S. Dep't of Justice*, 239 F. Supp. 3d 100, 105–06 n.1 (D.D.C. 2017), citing *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016). The Court will address the adequacy of the agency's justification for withholding the 34 pages at issue and the segregability requirement.

The 34 pages plaintiffs seek relate to "OCC's final conclusions which were presented to the Agency's senior management." *Vaughn* Index, App. A to Decl. of Frank D. Vance, Jr. [Dkt. # 12-2] ("*Vaughn* Index"). Defendant has withheld them pursuant to FOIA Exemptions 5 and 8. The Court finds that defendant has properly withheld the pages pursuant to Exemption 8, and therefore, it does not need to evaluate the applicability of Exemption 5. *See, e.g.*, *100Reporters LLC v. U.S. Dep't of Justice*, 316 F. Supp. 3d 124, 144 n.6 (D.D.C. 2018) ("[I]f a document is properly withheld under any FOIA exemption, the inquiry is over."), quoting *Mezerhane de Schnapp v. U.S. Citizenship and Immigration Servs.*, 67 F. Supp. 3d 95, 104 (D.D.C. 2014).

FOIA Exemption 8 provides that an agency may withhold information that is "contained in or related to examination, operating, or condition reports prepared by, or on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions." 5 U.S.C. § 552(b)(8). The exemption serves two purposes:

(1) to ensure the security of financial institutions by eliminating the risk that disclosure of examination, operation, and condition reports containing frank evaluations of the investigated banks that might undermine public confidence and cause unwarranted runs on banks; and (2) to safeguard the relationship between the banks and their supervising agencies because if details of the bank examinations were made freely available to the public and to banking competitors, banks would cooperate less than fully with federal authorities.

*McKinley v. F.D.I.C.*, 744 F. Supp. 2d 128, 142–43 (D.D.C. 2010).

Although FOIA exemptions must generally be "narrowly construed," *Milner v. U.S. Dep't of Navy*, 562 U.S. 562, 565 (2011), citing *Abramson*, 456 U.S. at 630 (internal quotations omitted), it is well-established that the scope of Exemption 8 is "particularly broad." *Consumers Union of U.S., Inc. v. Heimann*, 589 F.2d 531, 533 (D.C. Cir. 1978); *Pub. Inv'rs Arbitration Bar Ass'n v. SEC*, 930 F. Supp. 2d 55, 62 (D.D.C. 2013), *aff'd*, 771 F.3d 1 (D.C. Cir. 2014). The D.C. Circuit considered FOIA Exemption 8 for the first time in *Consumers Union* and concluded that "[i]f the Congress has intentionally and unambiguously crafted a particularly broad, all-inclusive definition, it is not our function, even in the FOIA context, to subvert that effort." 589 F.2d at 533.

Exemption 8 applies to "examination, operating, or condition reports" prepared by or for an agency responsible for the regulation or supervision of financial institutions, and "any documents that are logically connected to an examination, operating, or condition report." *Pub. Inv'rs*, 930 F. Supp. 2d at 62, quoting 5 U.S.C. § 552(b)(8) (internal quotations omitted). Plaintiffs do not contest that the exemption is broad, that defendant is a government agency "responsible for the regulation or supervision of financial institutions," or that the information they seek relates to information contained in a report the OCC prepared in relation to an examination it conducted. Pls.' Opp. at 4. But they argue that that the "public domain exception" applies. *See id*. at 4–6.

A FOIA plaintiff may compel disclosure of information "even over an agency's otherwise valid exemption claim," if the government previously "officially acknowledged" the information. *ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 620 (D.C. Cir. 2011), citing *Wolf*, 473 F.3d at 378. The rationale behind the doctrine is that once information has become public, any harm the agency fears from disclosure has already been sustained. *See Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 19–21 (D.C. Cir. 1999). This is also referred to as an "official acknowledgment" challenge. *See ACLU v. CIA*, 710 F.3d 422, 426–27 (D.C. Cir. 2013) (using the terms interchangeably).

According to the plaintiffs there is evidence in the record of authorized and public official disclosures of information that would fall within the scope of the withheld pages.[1] Pls.' Opp. at 5–6. They submit that OCC has publicly and officially acknowledged the following in an article published in American Banker:

> a) Prior to the OCC's enforcement action against Wells Fargo, "few banks approached risk governance over sales practices in an enterprise wide manner", and that the Report identified weaknesses in that area;

---

[1]      Plaintiffs also argue that the agency is relying on the "bank examiner's privilege" to justify its Exemption 8 withholding, and the "bank examiner's privilege" is a qualified privilege that can be overcome by a significant public interest in disclosure. Pls.' Opp. at 4–5, citing *Vaughn* Index. While the *Vaughn* Index does cite the "bank examiner's privilege" as a reason to withhold the documents – in addition to FOIA Exemptions 5 and 8 – this privilege is an evidentiary privilege that is separate from FOIA's statutory exemptions, and an analysis of the bank examination privilege is inapposite in a FOIA action involving Exemption 8. *See Bloomberg, L.P. v. United States Securities & Exchange Commission*, 357 F. Supp. 2d 156, 170 (D.D.C. 2004), citing *Nat'l Cmty. Reinvestment Coal. v. Nat'l Credit Union Admin.*, 290 F. Supp. 2d 124, 136 n.5 (D.D.C. 2003). Plaintiffs do not cite any cases that resolve claims of Exemption 8 in relation to a qualified bank examiner's privilege. *See* Pls.' Opp. at 5, citing *In re Subpoena Served Upon Comptroller of the Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992) (discussing the applicability of the bank examiner's privilege to withhold documents in response to a subpoena). The Court will not review the applicability of the privilege, and instead it will focus on the applicability of FOIA Exemption 8.

b) The Report found "instances at specific banks of accounts being opened without proof of customer consent"; and

c) Among the factors underlying misconduct identified in the Report were "short term sales promotions without adequate risk controls, deficient account opening and closing procedures, and isolated instances of employee misconduct."

Pls.' Opp. at 6, citing Kevin Wack, *Wells Fargo not alone: OCC finds sales abuses at other banks*, Am. Banker (June 5, 2018, 7:09 PM), https://www.americanbanker.com/news/not-just-wells-fargo-occ-finds-sales-practiceabuses-at-other-banks.   Plaintiffs also point generally to the Comptroller of the Currency's public testimony before the U.S. Senate Committee on Banking, Housing, and Urban Affairs, in which he announced that the OCC would conduct a review of sales practices at large and midsize banks, Pls.' Opp. at 5, but do not point the Court to any specific statements the Comptroller made.

The D.C. Circuit has established a "strict test" to be applied to claims of official disclosure. *Moore v. CIA*, 666 F.3d 1330, 1333 (D.C. Cir. 2011).  Information is officially acknowledged by an agency where: (1) "the information requested [is] as specific as the information previously released," (2) the requested information "match[es] the information previously disclosed," and (3) the requested information was already "made public through an official and documented disclosure." *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990).  A plaintiff asserting the applicability of the exception "must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld."  *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983).

Here, plaintiffs have not met their burden to show that the exception applies.  First, the Comptroller of the Currency testified before the agency conducted its review and reported on its

9

conclusions, so his remarks could not possibly serve as an official public disclosure of the contents of the report.

As for disclosures in the American Banker article, defendant submitted a detailed supplemental declaration in which the declarant examined the article, highlighted OCC's public disclosures within the article, and compared those disclosures with the 34 pages at issue.  Suppl. Decl. of Frank D. Vance, Jr. in Supp. of Office of the Comptroller of the Currency's Reply [Dkt. # 15-1] ("Suppl. Vance Decl.") ¶¶ 7–11.  He avers that the 34 pages consist almost exclusively of bank-specific examination results and intra-agency deliberations, which were not disclosed in the article.  *Id.*  ¶¶ 16–22.  For example, the agency declarant states that pages 1-3 contain an "introductory slide, a table of contents, and intra-agency recommendations regarding Horizontal Review next steps."  *Id.* ¶ 16.  The next three pages consist of "overall conclusions, which include [a] synthesized statistical analysis of the bank-specific examination results and comparisons between regulated institutions."  *Id.* ¶ 17.  The rest of the pages contain analyses of bank-specific information, including statistical information from the banks, the examination's results and findings, intra-agency recommendations, internal deadlines, and actions taken by other financial regulators.  *Id.* ¶¶ 18–22.  The agency avers that the pages are "substantively different" than what the agency has publicly disclosed.  *Id.* ¶ 23.

The public disclosures identified by the plaintiffs are general statements regarding the outcome of the Horizontal Review that do not disclose bank-specific examination results or reveal the agency's deliberations and recommendations.  Because the public disclosures are not as specific as the information the agency avers is contained in the pages at issue, the exception does not apply.  *Wolf*, 473 F.3d at 378 ("Prior disclosure of similar information does not suffice, the

*specific* information sought by the plaintiff must already be in the public domain by official disclosure.") (emphasis in original).

In light of the supplemental declaration, the Court finds that defendant has established the applicability of Exemption 8.  Plaintiffs point to no evidence that would controvert the agency's declarations, or undermine the presumption of good faith to which they are entitled.  *SafeCard Servs.*, 926 F.2d at 1200; *see Casey*, 656 F.2d at 738.

FOIA does require, though, that any reasonably segregable portion of a record shall be provided to any person requesting such record after removal of exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions.  *See* 5 U.S.C. § 552(b); *see also Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002).  The agency declarant has averred that OCC conducted a detailed review of the responsive documents, and that none of the withheld pages could be reasonably segregated and disclosed, Decl. of Frank D. Vance, Jr. [Dkt. # 12-2] ¶ 24; Suppl. Vance Decl. ¶ 25, and plaintiffs have not presented any evidence to the contrary.  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116–17 (D.C. Cir. 2007) (stating that a court will give a presumption of compliance to the agency in segregating material but that plaintiffs may overcome this presumption by presenting evidence to the contrary).  Thus, the declarations submitted by defendant are sufficient to fulfill the agency's obligation to show with reasonable specificity that a document cannot be further segregated.  *See Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578–79 (D.C. Cir. 1996).

11

**CONCLUSION**

For the foregoing reasons, the Court will grant defendant's motion for summary judgment.

A separate order will issue.


AMY BERMAN JACKSON
United States District Judge

DATE:  August 13, 2020

12